**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; and MARICOPA AUDUBON SOCIETY,<br><br>           Plaintiffs,<br><br>SAN CARLOS APACHE TRIBE, a federally recognized Indian Tribe; and SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY, a federally recognized Indian Tribe;<br><br>           Plaintiff-Intervenors,<br><br>v.<br><br>KENNETH SALAZAR, in his official capacity as Secretary of the U.S. Department of the Interior; and ROWAN GOULD, in his official capacity as the Acting Director of the U.S. Fish and Wildlife Service,<br><br>           Defendants. | No. CV10-2130-PHX-DGC<br><br>**ORDER** |

Plaintiff-Intervenor San Carlos Apache Tribe has filed a motion for attorneys' fees and non-taxable related costs. Doc. 113. The motion has been fully briefed. Docs. 117, 118. For the reasons discussed below the motion will be granted in part.

**I.     Background.**

Plaintiffs Center for Biological Diversity and Maricopa Audubon Society, and Plaintiff-Intervenors San Carlos Apache Tribe ("San Carlos") and Salt River Pima-

1  Maricopa Indian Community, filed complaints requesting that the Court set aside the
2  United States Fish and Wildlife Service's ("FWS") 12-month finding that the desert eagle
3  no longer qualifies for Endangered Species Act ("ESA") protection.  Docs. 1, 25, 41.  In
4  particular, San Carlos claimed that (1) FWS failed to rely on the best data available,
5  particularly the unique ecological knowledge possessed and submitted by San Carlos,
6  (2) FWS engaged in an improper distinct population segment (DPS) analysis under the
7  ESA, (3) FWS's application of the DPS policy was arbitrary, and (4) FWS failed to
8  consult with San Carlos and other tribes as required by the ESA.  Docs. 25 at 27-33; 61 at
9  23-25.

10  The Court granted in part and denied in part Plaintiffs' motions for summary
11  judgment.  Doc. 88.  The Court vacated the FWS's 12-month finding because FWS
12  engaged in a procedurally flawed DPS analysis.  The Court required the FWS to consider
13  the scientific and tribal ecological evidence presented by Plaintiffs in its new finding, and
14  asked that Defendants and Plaintiffs brief the issue of whether the Court should order
15  FWS to reinstate ESA protection until the FWS finished its reconsideration.  *Id.* at 15, 23.
16  The Court rejected San Carlos' argument that FWS failed to consult adequately with the
17  tribe.  *Id.* at 18-19.

18  After receiving Plaintiffs' and Defendants' supplemental briefing, the Court
19  denied Plaintiffs' request for an injunction.  Doc. 96 at 14.  The Court also denied San
20  Carlos' new request that the Court vacate the FWS's 2007 delisting rule as beyond the
21  scope of this litigation.  *Id.*

22  **II.    Legal Standard.**

23  For suits brought under the citizen-suit provision of the ESA, a court "may award
24  costs of litigation (including reasonable attorney and expert witness fees) to any party,
25  whenever the court determines such an award is appropriate."  16 U.S.C. § 1540(g)(4)
26  (2006).  An award is appropriate when the Plaintiff shows some degree of success on the
27  merits.  *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 682-84 (1983).

28

### A. The Catalyst Theory.

San Carlos argues that the Court should apply the "catalyst theory" of attorneys' fees used in *Association of California Water Agencies v. Evans*, 386 F.3d 879, 885 (9th Cir. 2004). The catalyst theory requires that plaintiffs receive some of the benefits they sought when they brought the litigation, that the litigation was the cause of plaintiffs' receiving the benefit, and that the benefit was required by law and not the gratuitous act of the defendant. The catalyst theory applies, however, only when "a plaintiff does not win a final judgment on the merits[.]" *Evans*, 386 F.3d at 886 (internal citations omitted). The catalyst theory does not apply here because a final judgment was issued on the claim that FWS's DPS analysis was improper.

### B. Limited Success.

Instead of the catalyst theory, the Court will apply the limited success analysis used by the Ninth Circuit in *Sorenson v. Mink*. 239 F.3d 1140 (9th Cir. 2001). *Sorenson* instructs that "[a] district court may, in its discretion, make deductions" of attorneys' fees when the plaintiff has only limited success. *Id.* at 1147. *Sorenson* lays out a two part test to determine appropriate deductions.

"The first step is to consider whether the plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded. Claims are unrelated if they are entirely distinct and separate from the claims on which the plaintiff prevailed." *Id.* (internal citations omitted). Claims are related if they "involved a common core of facts and were based on related legal theories." *Id.* (internal citations omitted). "Hours expended on unrelated, unsuccessful claims should not be included in an award of fees." *Id.* (internal citations omitted).

"The second step of the analysis is to consider whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making the fee award. In answering that question, a district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* (internal citations omitted). If a plaintiff

achieved "excellent results," despite not receiving all the relief requested, "his attorney should recover a fully compensatory fee." *Id.* (internal citations omitted).

**III. Analysis.**

In this case, San Carlos prevailed on its claim that the FWS engaged in an improper DPS analysis. Although the Court did not reverse the FWS action on the ground that it failed to rely on the best data available, including unique tribal ecological knowledge, it did suggest that FWS consider that knowledge on remand. Doc. 88 at 15. The Court rejected San Carlos' argument that the FWS failed to consult sufficiently with the tribe. *Id.* at 16-23.

    **A.** *Sorenson* **Analysis.**

Applying the first step of the *Sorenson* analysis, the Court concludes that the tribe's claim that the FWS failed to consider tribal ecological knowledge was related to the successful claim. The Court's decision was based on the fact that the FWS relied on its previous, procedurally-flawed decision in making its DPS determination, rather than addressing new information related to the determination. Doc. 88 at 9-15. The Court focused primarily on the procedure followed and the explanations provided by the FWS in making the decision, but its holding was premised on the fact that the FWS relied on its prior decision, not on new and relevant information, when it rendered the 12-month decision. The San Carlos claim that the FWS disregarded tribal ecological knowledge was closely related to this successful claim.

The same cannot be said of the San Carlos argument that the FWS failed to consult with the tribes. The Court rejected this claim as an incorrect interpretation of the law. *Id.* at 16-23. More importantly, the Court can see no necessary connection between the claim that the FWS failed to engage in legally required consultation with tribes and the successful claim that FWS's internal decision was based on an improper reliance on its previous, procedurally-flawed decision. *Id.* at 9-15. The Court concludes that the time and money spent on the tribal-consultation argument is not recoverable under *Sorenson*.

- 4 -

Applying the second step of the *Sorenson* analysis, the Court concludes that San Carlos achieved a level of success in the litigation – remand of the FWS decision – sufficient to justify the time expended on the closely related claim of failure to consider unique tribal knowledge. With adjustments for specific billing issues identified below, the Court concludes that time attributable to this claim is reasonably justified by the success achieved.

### B. Significant Role in the Litigation.

Defendants argue that the Court should deny San Carlos attorneys' fees because "[a]wards to intervenors should not be granted unless the intervenor plays a significant role in the litigation." *Grove v. Mead Sch. Dist., No. 354*, 753 F.2d 1528, 1535 (9th Cir. 1985). Defendants argue that the San Carlos role was not significant because their legal arguments about the winning claim were either dismissed, not addressed by the Court, or raised by the other parties. But "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Hensley v. Eckerhart*, 461 U.S. 424 (1983). Further, San Carlos raised arguments that Plaintiffs Center for Biological Diversity and Maricopa Audubon Society did not raise.[1] *See New Jersey v. E.P.A.*, 663 F.3d 1279, 1282 (D.C. Cir. 2011) (discussing how a tribal intervenor raising arguments plaintiff could not is precisely the kind of intervention we seek to incentivize). The Court therefore concludes that San Carlos played a significant role in the litigation.

### C. Reasonableness of the Fees.

San Carlos requests $65,927.01 in attorneys' fees and costs. Doc. 133 at 2. Defendants argue that this amount is unreasonable for a variety of reasons.

#### 1. Deductions for Unsuccessful Claims and Arguments.

Defendants first argue that the fee amount San Carlos requests is unreasonable because (1) the amount includes hours billed for unsuccessful arguments and arguments

---

[1] These include the tribal ecological knowledge claim.

- 5 -

also made by other parties, and (2) San Carlos achieved only limited success. As explained previously, San Carlos' tribal ecological knowledge claim is sufficiently related to the successful claim in this case to be recoverable, and the tribal consultation claim is not sufficiently related. Unfortunately, San Carlos does not provide a breakdown of time spent on these two claims, and, as discussed below, its practice of block-billing prevents the Court from finding the answer in the attorney time records. San Carlos also claimed in its complaint that the FWS engaged in an improper DPS analysis, but this argument was not directly addressed in its motion for summary judgment and thus cannot be said to have consumed an appreciable amount of time.

Using its best judgment, and in the absence of precise billing records by the San Carlos attorneys, the Court concludes that 65% of the San Carlos fees are properly attributable to (1) the tribal ecological knowledge claim that was briefed in detail by San Carlos and was closely related to the successful claim, (2) the successful claim asserted in the complaint but not briefed in detail by San Carlos (that the FWS engaged in an improper DPS analysis), and (3) other time billed by the San Carlos lawyers as a result of their participation in this case (such as briefing the remedy as required by the Court).

### 2. Specific Reductions.

Defendants make specific objections to the work performed by San Carlos' attorneys. Specifically, the Defendants argue that (1) the fee amount includes time billed for responding to an amicus curiae brief, (2) the fee amount includes hours for an oral argument where San Carlos' attorneys did not speak, (3) the fee amount includes hours billed for clerical time, (4) San Carlos billed an excessive number of color copies without explanation, (5) San Carlos should not have billed for online research expenses, and (6) the hours billed by Mr. Martin after his bar admission should be billed at his pre-bar admission rate. The Court will address these arguments in turn.

#### a. Amicus Curia Response.

Defendants argue that San Carlos' attorneys' fees should not include time spent replying to *amicus curia* because that time was not spent "opposing government

resistance." *Love v. Reily*, 924 F.2d 1492, 1496 (9th Cir. 1991). But *Love* is factually distinguishable from this case. In *Love,* the Ninth Circuit excluded time plaintiff spent responding to an intervenor's motion that the United States did not join. *See Love*, 924 F.2d at 1495-96. Here, San Carlos responded to an *amicus* brief on issues originally raised by the United States. Accordingly, the time was properly spent opposing government resistance. *See Southwest Center for Biological Diversity v. Bartel,* No. 98-CV-2234-B(JMA), 2007 WL 2506605, at *8 (S.D. Cal. Aug. 30, 2007) (holding that *Love* requires that "a fee award against the government must exclude that part attributed to a third party's positions in which United Stated did *not* take a position *adverse* to the prevailing party") (emphasis in original).

### b. **Oral Argument.**

San Carlos' attorneys did not participate in Plaintiffs' oral argument. A San Carlos attorney nonetheless billed 12.5 hours, at $220 per hour, preparing for the argument, and a paralegal billed 1.45 hours at $75 per hour. The Court concludes that this time was not reasonably incurred and will deduct $2,858.75 from the requested total before applying the 65% figure identified above.

### c. **Clerical Tasks.**

Tasks that are secretarial in nature should be subsumed in a law firm's overhead. *See Schrum v. Burlington N. Santa Fe Ry. Co.*, CIV 04-0619-PHX-RCB, 2008 WL 2278137, at *12 (D. Ariz. May 30, 2008) (reducing attorneys' fees for hours spent on purely clerical tasks); *see also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) (holding that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"). Reviewing the itemized statement, it is clear that San Carlos billed for some secretarial time, including researching USPS tracking and filing the complaint and other documents. *See* Ms. Gard's entry dated 2/8/11; Mr. Martin's entry dated 11/24/10. The practice of block billing by San Carlos' attorneys, discussed further below, has made it difficult to determine precisely how much time was spent on secretarial tasks. Defendants propose a deduction of 12.93 hours, but do not

make clear how many hours should be deducted from each attorney, law clerk, or paralegal, all of whom bill at different rates. The Court will deduct 12.93 hours at the average billable rate among the different participants. The participants are one attorney at $220 per hour, one law clerk at $130 per hour, and two paralegals at $75 per hour. The average rate is $125 per hour. The Court will deduct $1,616.25 from the requested total before applying the 65% figure identified above.

### d. Color Copies.

San Carlos made 1,843 pages of color copies at $0.75 per page and 5,780 pages of black and white copies at $0.05 a page. This is an unreasonable number of color copies. The Court will permit all of the copies at the black and white price, deducting $1,290.10 from the total attorneys' fees and costs. The Court will deduct this amount before applying the 65% figure identified above.

### e. Online Research.

Online research costs are generally considered overhead to be reflected in a law firm's hourly rate. *Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*, 07-CV-358-PK, 2008 WL 4866063, at *20 (D. Or. Nov. 5, 2008). They are not properly included in requests for attorneys' fees. *Id.* The court will deduct $694 from the attorneys' fees and costs for online research before applying the 65% figure identified above.

### f. Mr. Martin's Billable Rate.

Mr. Martin started this case as a law clerk, billing $130 per hour. After passing the bar exam, Mr. Martin became an associate attorney, billing $180 per hour. Mr. Martin billed approximately 11% of his time at this higher rate. The Court finds this to be reasonable.

### g. Deductions for Billing Practices.

Defendants attack the billing practices of San Carlos, claiming that (1) San Carlos' attorneys engaged in "block billing," (2) San Carlos billed excessive time, and (3) San Carlos billing entries lack adequate detail. San Carlos did engage in block billing and inadequately detailed entries. This violates the Court's local rules. *See* LRCiv 54.2(e).

Block billing makes it difficult to assess the reasonableness of time spent on any particular task. Because the Court's 65% figure attempts to remove time devoted to the unrelated tribal consultation claim, no further adjustment to the block bills is required to account for that claim. The Court will, however, deduct an additional 10%, after applying the 65% figure, to account for the block billing that clearly is impermissible under the Court's local rules. *See Schrum v. Burlington N. Santa Fe Ry. Co.*, CIV 04-0619-PHX-RCB, 2008 WL 2278137, at *9 (D. Ariz. May 30, 2008) (applying ten percent reduction for violating the Court's local rule).

### D. Total Award.

Applying the adjustments discussed above, the Court will award $34,788.73 in attorneys' fees and costs to San Carlos.

**IT IS ORDERED:**

1. Plaintiff-Intervenor San Carlos Apache Tribe's motion for attorneys' fees and non-taxable costs (Doc. 113) is **granted in part**.
2. Intervenor San Carlos Apache Tribe is awarded $34,788.73 in attorneys' fees and costs.

Dated this 15th day of November, 2012.

David G. Campbell
United States District Judge